# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA     :     Hon. Joseph A. Dickson

       v.           :     Mag. No. 16-6648

MICHAEL ESPOSITO        :     **CRIMINAL COMPLAINT**

I, Stephen Csapo, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

In violation of Title 18, United States Code, Section 1343.

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached page and made a part hereof.

_____
Stephen Csapo, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

October 31, 2016             at Newark, New Jersey

HONORABLE JOSEPH A. DICKSON     _____
UNITED STATES MAGISTRATE JUDGE     Signature of Judicial Officer

## ATTACHMENT A

From at least in or about August 2013 through in or about November 2013, in the District of New Jersey and elsewhere, defendant MICHAEL ESPOSITO did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud investors by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, namely, e-mails from an e-mail account he controlled in New Jersey to an e-mail account located outside of New Jersey detailing alleged investment options and wire transfers from a bank account in New Jersey a to bank account in North Carolina.

## ATTACHMENT B

I, Stephen Csapo, am a Special Agent with the Federal Bureau of Investigation ("FBI"). I am familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and other evidence. Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where statements of others are related herein, they are related in substance and in part unless otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

### Background

1.      At all times relevant to this Complaint:

a. Defendant MICHAEL ESPOSITO ("defendant ESPOSITO"), was a resident of North Caldwell, New Jersey. Defendant ESPOSITO was the President of the following entities, among others, which purported to be in the business of purchasing consumer products in bulk from manufacturers for resale to wholesalers and retailers: AME Consulting Group, LLC; AME Group LLC; and AG Distributors Inc. (collectively, the "Esposito Entities"). Defendant ESPOSITO used an e-mail account in furtherance of his alleged business activities. Defendant ESPOSITO controlled numerous bank accounts opened in the names of the above entities, among others.

b. "Victim 1" was an owner of a company based in or about Charlotte, North Carolina. Victim 1 maintained a bank accounts in North Carolina in his name and that of the company he owned.

### Defendant ESPOSITO's Fraudulent Activity

2.      In or about August 2013, Victim 1 was introduced to defendant ESPOSITO. Defendant ESPOSITO thereafter informed Victim 1 that defendant ESPOSITO had a customer that backed out of the purchase of certain medical supplies. Defendant ESPOSITO also sent a number of emails detailing the medical supplies transaction to Victim 1. Through his contacts, Victim 1 was able to locate a buyer to whom he could sell the medical supplies and earn a profit of approximately 10-12%.

3.      Between August 9, 2013 and August 19, 2013, Victim 1 wired approximately $143,000 from his bank account in North Carolina to an AME Group bank account in New Jersey, as directed by defendant ESPOSITO, for the purchase of goods. Bank records demonstrate that rather than use any of

the money that Victim 1 wired to purchase medical supplies, defendant ESPOSITO instead used Victim 1's funds to pay the following types of expenses, among other things: (a) apparent victim investors from prior transactions; (b) restaurant bills; and (c) salary for himself and others.   In most cases, defendant ESPOSITO transferred money between multiple accounts that he controlled before converting Victim 1's funds to his own use.

4.     Despite the fact that he had misappropriated Victim 1's funds, defendant ESPOSITO sent Victim 1 numerous fraudulent communications that were designed to lead Victim 1 into believing that the delivery of the medical supplies was imminent.   For example, on or about September 4, 2013, defendant ESPOSITO sent Victim 1 an email in which he provided an address from where the medical supplies at issue would be shipped.

5.     From in or about September 2013 through in or about January 2014, Victim 1 and defendant ESPOSITO exchanged emails and had conversations with defendant ESPOSITO in which Victim 1 sought the return of his money for the medical supplies deal and the deals described below. Ultimately, defendant ESPOSITO never delivered the medical supplies to Victim 1.

6.     While the medical supplies transaction described above was pending, defendant ESPOSITO sent Victim 1 a number of emails detailing a series of investment opportunities.   According to the emails, defendant ESPOSITO had the ability to purchase consumer goods, such as razor blades, energy drinks, soda, and bottled water, among other items, in bulk and at substantial discounts.   According to the emails, defendant ESPOSITO also had buyers lined up to whom he could sell these products at a profit; he, however, needed funding to complete the transactions.   Defendant ESPOSITO offered to give Victim 1 60% of the profits from these deals, all of which were short-term (5 to 7 day) deals, if Victim 1 helped fund defendant ESPOSITO's initial purchases of the goods involved in these transactions.

7.     For example, in an email from to Victim 1 dated on or about August 12, 2013, defendant ESPOSITO outlined a series of "OFFERS" for the "WEEK OF 8-12-2013" and included the following chart:

| DESCRIPTION | LEAD TIME | PURCHASE PRICE | SALE PRICE |
|---|---|---|---|
| Rubbermaid | 3-4 | $ 21,029.00 | $ 23,937.00 |
| Kix | 3-5 | $ 40,450.00 | $ 45,316.00 |
| Mars | 7-10 | $ 38,079.00 | $ 46,824.00 |
| Monster Energy | 3-5 | $ 69,696.00 | $ 77,760.00 |
| Poland Spring | 3-4 | $ 39,852.00 | $ 49,200.00 |
| Lifescan | 5-6 | $ 54,632.00 | $ 62,496.00 |
| 3M | 5-6 | $ 64,500.00 | $ 72,885.00 |
| Hershey | 7-10 | $ 62,974.00 | $ 68,842.00 |
| American Beverage | 5-7 | $ 41,872.00 | $ 46,164.00 |
| Yoo Hoo | 3-5 | $ 23,808.00 | $ 26,665.00 |
| | | | |
| | | | |
| | | | $ 520,089.00 |

8.    In another email dated on or about August 12, 2013, defendant ESPOSITO clarified his proposal: "Correct 60 to you-40 to me and as long as the buy happens prior to the cut off time on the purchase we are on a schedule of turn from the days noted."

9.    Based on the above representations, among others, on or about August 13, 2013, Victim 1 invested in the "Monster" beverages deal outlined above and wired approximately $69,696 from Victim 1's company's bank account in North Carolina to a bank account defendant ESPOSITO controlled in New Jersey.   Pursuant to his agreement with defendant ESPOSITO, Victim 1 was to receive his principal plus profits from the subsequent sale of the Monster beverages within 7 days.

10.    On or about August 20, 2013, defendant ESPOSITO caused a wire in the amount of approximately $77,760 to be sent from a bank account in New Jersey to Victim 1.   Defendant ESPOSITO represented to Victim 1 that this wire represented Victim 1's principal and profits from the Monster beverages deal.   A review of relevant bank records for accounts controlled by Defendant ESPOSITO, however, does not reflect any investments in a Monster beverages deal; rather, the wire transfer that defendant ESPOSITO sent Victim 1 was funded by money that defendant ESPOSITO obtained from other investors, as well as from Victim 1 himself.

11.    Based on emails that defendant ESPOSITO sent to Victim 1 between in or about August 2013 through in or about September 2013, Victim 1 caused numerous wire transfers to be sent from a bank account in North Carolina a bank account in New Jersey.   Each of the wire transfers referred to in the preceding sentence was sent to fund a consumer goods deal that

defendant ESPOSITO claimed he had lined up.   In each instance, defendant ESPOSITO claimed that he would use Victim 1's funds to purchase the goods at issue, sell the goods at a profit, and return Victim 1's principal plus 60% of the profits from the deal to Victim 1, all within 7 days.   In each instance, however, records reveal that defendant ESPOSITO did not use the funds wired by Victim 1 in the manner represented, but rather converted the funds to his own use and benefit.   In addition, he used the funds Victim 1 sent to repay other victim investors involved in unrelated transactions, and to appear to be providing principal and profits to Victim 1.

12.    In total, between in or about August 2013 and in or about September 2013, Victim 1 caused more than $1,000,000 to be wired from accounts that he controlled in North Carolina to defendant ESPOSITO in New Jersey for purported investments in the medical supplies and consumer goods transactions discussed above.   During this same period, defendant ESPOSITO caused approximately $517,000.00 to be wired back to Victim 1, representing that these funds were the return of principal and profits from successful deals. Records reflect, however, that defendant ESPOSITO had not invested Victim 1's money, and that he had converted the remaining money that Victim 1 wired to him to his own use.

13.    Despite the fact that defendant ESPOSITO had converted Victim 1's funds, from in or about September 2013 through in or about November 2013, defendant ESPOSITO continued to send Victim 1 emails as well as text messages falsely stating that certain deals were still in progress and that problems with defendant ESPOSITO's bank were preventing him from wiring funds back to Victim 1.   For example, on or about September 27, 2013, defendant ESPOSITO sent Victim 1 an email stating: "I called the bank and for some reason the wire was reverted back and I'm resending."   Bank records demonstrate the e-mail was false.

14.    Since in or about January 2014, defendant ESPOSITO has ceased communicating with Victim 1.

15.    The investigation, including victim interviews and a review of bank records, has revealed that defendant ESPOSITO defrauded other individuals in a similar manner.